LEPLEY *v.* BRYANT.

1. TRIAL—MOTION FOR DIRECTED VERDICT—EVIDENCE.
The trial judge is bound to interpret the testimony, and the legitimate inferences from the facts established, as strongly as possible in plaintiff's favor in passing on defendant's motion for a directed verdict at the conclusion of plaintiff's proofs.

2. EVIDENCE—INFERENCES.
A jury may draw reasonable and legitimate inferences from established facts.

3. NEGLIGENCE—INFERENCES.
Negligence may be inferred from the facts and circumstances.

4. SAME—PHYSICAL FACTS.
Physical facts may justify a jury finding that defendant is guilty of negligence.

5. SAME—INFERENCES—CIRCUMSTANCES.
Negligence may be inferred from circumstances which place the case within the field of legitimate inferences from established facts.

6. AUTOMOBILES—EQUESTRIENNE—DIRECTED VERDICT—NEGLIGENCE—PROXIMATE CAUSE—CONTRIBUTORY NEGLIGENCE—DAMAGES—EVIDENCE.
Directed verdict at close of plaintiff's proofs was properly denied in equestrienne's action against motorist for injuries sustained, where jury was justified in inferring from her proofs that defendant's automobile struck a glancing blow on the left rear flank and leg of her horse while she was on the right side of

REFERENCES FOR POINTS IN HEADNOTES

[1] 53 Am Jur, Trial § 349.
[2] 20 Am Jur, Evidence § 270.
[3–6] 38 Am Jur, Negligence §§ 295 *et seq.,* 333.
[6] 53 Am Jur, Trial § 362.
[7] 53 Am Jur, Trial § 158.
[9, 10] 5 Am Jur, Automobiles §§ 259, 260.
[12] 5 Am Jur, Automobiles §§ 171, 176.
[12] "Emergency rule" as applied to automobile or motorcycle drivers.
6 ALR 680; 27 ALR 1197; 79 ALR 1277; 111 ALR 1019.

the pavement, or on the shoulder of the road, it being for the jury to determine issues of negligence, proximate cause, contributory negligence, and damages.

7. S<span>AME</span>—D<span>IRECTED</span> V<span>ERDICT</span>—M<span>OTION FOR</span> J<span>UDGMENT</span> N<span>OTWITHSTAND</span>-<span>ING</span> V<span>ERDICT</span>—E<span>VIDENCE</span>.

Directed verdict and motion for judgment notwithstanding verdict were both properly denied at close of proofs in action by equestrienne against motorist, where issues of fact were presented for determination by jury.

8. T<span>RIAL</span>—D<span>IRECTED</span> V<span>ERDICT</span>—I<span>SSUES OF</span> F<span>ACT</span>.

A verdict may not be properly directed for either party, where issues of fact are presented for jury's determination.

9. A<span>UTOMOBILES</span>—I<span>NSTRUCTIONS</span>—S<span>PEED</span>.

Instruction of court which embodied reading to jury portion of statute requiring a motorist so to drive his automobile that he can bring it to a stop within the assured clear distance ahead was not prejudicial to defendant motorist whose car struck plaintiff's mount a glancing blow on the left rear flank and leg shortly after he left driveway on opposite side of road, as defendant was charged with having seen plaintiff and her horse ahead of him and it appears jury accepted plaintiff's theory as to how accident happened, proved in part by testimony of defendant's admissions (PA 1949, No 300, § 627[a]).

10. S<span>AME</span>—E<span>QUESTRIENNE</span>—O<span>VERTAKING</span>    V<span>EHICLE</span>—I<span>NSTRUCTIONS</span>— S<span>TATUTES</span>.

Inclusion in instruction of section of statute relative to overtaking motorist's conduct with reference to rights and duties of one riding an animal upon a highway was not error in equestrienne's action against motorist, where the motorist's duty is clearly defined by statute and if defendant so operated his automobile to strike plaintiff's horse proceeding in same direction, such duty was clearly violated (PA 1949, No 300, § 636).

11. S<span>AME</span>—E<span>QUESTRIENNE</span>—I<span>NSTRUCTIONS</span>.

Charge of court in equestrienne's action against motorist, when taken as a whole *held*, to have fully and carefully covered and safeguarded rights and obligations of both parties.

12. S<span>AME</span>—R<span>EQUESTS TO</span> C<span>HARGE</span>—I<span>NSTRUCTIONS</span>—S<span>UDDEN</span> E<span>MERGEN</span>-<span>CY</span>—N<span>EGLIGENCE</span>.

Denial of defendant motorist's requests to charge relative to application of sudden emergency rule was not error in equestrienne's action against him, where court did instruct jury that motorist was not required to bring his "automobile to an immediate stop upon the sudden arising of a dangerous situation

which the driver could not reasonably have anticipated" and requests to charge did not embrace a provision that the rule would not apply if the emergency resulted in whole or in part from negligence of the party seeking to invoke its protection.

Appeal from Calhoun; Hatch (Blaine W.), J. Submitted January 23, 1953. (Docket No. 81, Calendar No. 45,744.) Decided March 10, 1953.

Case by Deirdre Lepley against Harold C. Bryant for injuries suffered when horse she was riding was struck by defendant's automobile. Verdict and judgment for plaintiff. Defendant appeals. Affirmed.

*George A. Winkler* and *Walter P. North,* for plaintiff.

*McAuliffe & Harbert,* for defendant.

CARR, J. Plaintiff brought suit in circuit court to recover damages for personal injuries claimed to have resulted from defendant's negligence in the operation of his automobile. The declaration filed in the case alleged that on the 7th of September, 1950, about 7 o'clock in the evening, plaintiff was riding a horse in a northerly direction on a certain highway in Emmett township, Calhoun county; that defendant so operated his vehicle as to run into the horse, striking the animal on the left flank; and that as a result plaintiff was thrown to the ground. It was further averred that plaintiff at the time was free from any contributory negligence; and that she received serious injuries, some of which were permanent in character. Defendant's answer denied all allegations of negligence on his part, and also denied plaintiff's claim that she was free from negligence.

The case was tried before a jury. At the conclusion of plaintiff's proofs defendant moved for a

directed verdict on the ground that the testimony was insufficient to show negligence on defendant's part, or plaintiff's freedom from contributory negligence. The motion was taken under advisement by the trial judge. It was renewed at the close of the testimony in the case and decision was again reserved.* The jury returned a verdict in plaintiff's favor in the sum of $6,000. A motion for judgment notwithstanding the verdict was submitted and denied. Defendant's motion for a new trial was also denied, and defendant has appealed, claiming that he was entitled to a directed verdict and that, in consequence, the motion for judgment notwithstanding the verdict should have been granted. Appellant further claims that errors prejudicial to him were committed during the course of the trial, which errors were alleged by him as the bases of his motion that the verdict be set aside and a new trial ordered.

As a witness in her own behalf, plaintiff testified that at the time of the accident she was riding at the east side of the road in a northerly direction, that the horse was walking, that the animal was gentle and well trained, and that passing automobiles did not disturb him. It was her claim that the accident happened approximately 45 or 50 feet to the north of a driveway intersecting the road from the west. She stated further that she had no specific recollection of the automobile striking her horse or herself, that she recalled passing certain bushes on the shoulder of the road, and that the next occurrences that she recalled took place the following morning in the hospital. It was her testimony, also, that her recollection of matters that occurred during the ensuing week was indistinct. She stated positively that she had not seen an automobile approaching the road in

* See CL 1948, § 691.691 *et seq.* (Stat Ann 1951 Cum Supp § 27.-1461 *et seq.*).—Reporter.

the driveway, above mentioned. Her remaining testimony had reference principally to her injuries. A physician who examined her after the accident testified to lacerations, contusions and bone fractures that she sustained.

Plaintiff's husband testified that he saw defendant at the hospital the night of the accident, shortly after plaintiff had been received therein, that he asked defendant what happened, and that defendant replied that he didn't know. He further stated that defendant spoke to plaintiff, saying "Little girl, what happened? I didn't see you." The witness claimed that such statement was repeated 3 or 4 times, and that plaintiff stated that she was at the side of the road, which statement defendant did not deny, saying merely that he didn't know what happened.

Plaintiff's witness, Eugene F. Schlorf, also testified to a conversation with defendant about the accident, stating that the latter said that he didn't see the horse, to his knowledge, and didn't know what had happened. The witness examined the horse following the accident, finding an injury in the region of the left flank immediately in front of the left rear leg. The leg was scarred and from the hip down the animal was scarred and bleeding. The witness further testified that the horse at the time of the examination was calm, and that in general he was gentle and not nervous or shy. Mrs. Schlorf gave testimony of like nature, stating that in answer to her question as to what had happened defendant said, "I don't know, I just don't know, I struck her, and that's all, I just don't know." This witness further testified that defendant stated that he struck plaintiff and the horse.

The testimony of plaintiff's witnesses further indicates that defendant told them that he entered the road from the driveway located south of the point where the accident occurred. That his automobile

struck plaintiff's horse is not questioned. According to the testimony of plaintiff's witnesses, defendant admitted such fact. His statements, if made as claimed, that he did not know how the accident happened suggests that after entering the road from the driveway he failed to exercise due and proper care for the safety of others on the highway, particularly the plaintiff. If he failed to see her as she proceeded on the east side of the pavement, or on the shoulder of the road, an inference that he was not keeping a reasonable and proper outlook as he proceeded is fully justified. In passing on the motion for a directed verdict at the conclusion of plaintiff's proofs the trial judge was bound to interpret the testimony, and the legitimate inferences from the facts established, as strongly as possible in plaintiff's favor. The physical facts shown, particularly the nature of the injury sustained by the horse, are significant. The jury was justified in inferring that the animal was struck by defendant's automobile on the left rear flank and leg, and that the blow was a glancing one.

In *Brown* v. *Arnold,* 303 Mich 616, 623, it was said:

"The facts we have recited were established by the testimony, and we have repeatedly held that a jury may draw reasonable and legitimate inferences from established facts. Negligence may be inferred from the facts and circumstances. Physical facts may justify a jury finding that defendant is guilty of negligence. *Faustman* v. *Hewitt,* 274 Mich 458; *Trent* v. *Pontiac Transportation Co., Inc.,* 281 Mich 586. Negligence may be inferred from circumstances which place the case within the field of legitimate inferences from established facts. *Fish* v. *Railway,* 275 Mich 718."

The above statement was quoted with approval in *Anderson* v. *Kearly,* 312 Mich 566. In applying the suggested rule, it was said:

"Having in mind that upon a motion to direct a verdict against plaintiff, the testimony and all legitimate inferences which may be drawn from it most favorable to plaintiff must be accepted, we are of the opinion that plaintiff established a prima facie case."

Defendant was not entitled to a directed verdict at the conclusion of plaintiff's proofs. Under the testimony that had been received, it was for the jury to determine the issues of negligence, proximate cause, contributory negligence, and damages.

Defendant's testimony on the trial was not in accord with his alleged admissions to plaintiff's witnesses. He did not admit the making of the statements in question, but whether he did so was for the determination of the jury. It was his claim that he saw plaintiff and her horse as he approached them, that he was driving at a moderate rate of speed, and that as he came out of the driveway he swung over to the right side of the pavement and then turned to his left in order to pass the plaintiff. According to his testimony his car was approximately in the center of the pavement at the time it struck plaintiff's horse, which defendant claimed suddenly and unexpectedly jumped in front of the car so that he could not avoid striking him. He stated that the pavement was approximately 18 feet in width, although a witness in his behalf testified that such width was 20 feet. Further proofs disclosed that the right-front fender of the automobile was bent, and the radiator was damaged. Defendant did not claim that in undertaking to pass plaintiff he turned to the left as far as possible. It further appears that following the accident the car was partly on the east side of the road and headed in a northwesterly direction.

In view of the conflicting nature of the testimony, we conclude that the trial court was not in error in submitting the case to the jury. Issues of fact were presented for determination. The rule is well settled that a verdict may not properly be directed in favor of either party under such circumstances. *Davis* v. *Belmont· Creamery Co.*, 281 Mich 165; *Selman* v. *City of Detroit*, 283 Mich 413. There was no error in the denial of the motion for judgment notwithstanding the verdict.

This brings us to a consideration of appellant's claim that he is entitled to a new trial because of materially prejudicial errors in the charge to the jury and in the refusal to give certain requests to charge submitted by counsel for defendant. With reference to the duties resting on the defendant in the operation of his automobile, the trial judge directed the attention of the jury to certain provisions of the motor vehicle code, PA 1949, No 300 (CL 1948, § 257.1 *et seq.* [Stat Ann 1952 Rev § 9.1801 *et seq.*]). Among other provisions, the court read to the jury section 627(a) (CL 1948, § 257.627 [a] [Stat Ann 1952 Rev § 9.2327(a)]), as follows:

"Any person driving a vehicle on a highway shall drive the same at a careful and prudent speed not greater than nor less than is reasonable and proper, having due regard to the traffic, surface and width of the highway and of any other condition then existing, and no person shall drive any vehicle upon a highway at a speed greater than will permit him to bring it to a stop within the assured, clear distance ahead."

Appellant's objection is directed to the concluding sentence of the section quoted, it being claimed in substance that the proofs in the case were not of such character as to justify an inference or conclusion that defendant could not stop within the assured

clear distance ahead. In view of the testimony offered in plaintiff's behalf as to the admissions made by defendant, we think that the charge was a proper one and that appellant's claim that he was materially prejudiced thereby is not well founded. Defendant was charged with having seen plaintiff and her horse. If plaintiff's theory, which the jury obviously accepted, as to where and how the accident happened was correct, it is a fair inference that defendant did not make proper observations to determine the "clear distance ahead."

The trial judge also called attention in his charge to section 604 of the motor vehicle code (CL 1948, § 257.604 [Stat Ann 1952 Rev § 9.2304]) with reference to the rights and duties of one riding an animal or driving an animal-drawn vehicle upon a highway. Section 636 (CL 1948, § 257.636 [Stat Ann 1952 Rev § 9.2336]), was read, said section being as follows:

"The following rules shall govern the overtaking and passing of vehicles proceeding in the same direction, subject to those limitations, exceptions, and special rules hereinafter stated:

"(a) The driver of any vehicle overtaking another vehicle proceeding in the same direction shall pass at a safe distance to the left thereof, and when safely clear of such overtaken vehicle shall take up a position as near the right-hand edge of the main traveled portion of the highway as is practicable.

"(b) Except when overtaking and passing on the right is permitted, the driver of an overtaken vehicle shall give way to the right in favor of the overtaking vehicle on audible signal and shall not increase the speed of his vehicle until completely passed by the overtaking vehicle."

Error is assigned by appellant on this charge and on the further remarks of the judge to the jury, based on the statute, with reference to the duty of the defendant in undertaking to pass the horse

ridden by plaintiff. It is contended that too great a burden was placed on defendant. However, the duty is clearly defined by the statute, and, if the defendant so operated his car as to strike the horse on the east side of the highway where plaintiff claimed to have been riding, such duty was clearly violated.

An examination of the charge as given discloses that the trial judge sought to cover fully the claims of the parties to the case insofar as such claims were supported by proofs, or by legitimate inferences from facts. The rights and obligations of both parties were fully and carefully explained. Read in its entirety the charge is not open to the criticism that appellant's rights were not thereby adequately safeguarded. Other claims of appellant as to alleged erroneous instructions do not require specific discussion. We have considered them in detail and conclude that they are without substantial merit.

As before noted, it was the claim of the defendant on the trial that plaintiff's horse suddenly leaped or jumped in front of his car when it was in such proximity to the animal that he could not avoid the impact. Based on such claim the following requests to charge were submitted:

"I charge you that the law makes allowance for acts in an emergency and sudden peril and for lack of coolness of judgment incident thereto. *Flynn* v. *Kramer,* 271 Mich 500.

"I charge you that one who is suddenly put in peril is not imperatively required to do that which after the peril is ended it is seen he might have done and escaped. The law makes allowances for fright and lack of coolness of judgment incident to such peril or danger. *Luck* v. *Gregory,* 257 Mich 562.

"I charge you that a driver in a sudden emergency cannot be judged by ordinary standards of due care. An allowance has to be made for the time required for the mental and physical operations to enable the

driver to meet the emergency under the conditions existing at the time. *Suarez* v. *Katon,* 299 Mich 38."

Each request is phrased in accordance with the language of this Court, in the case cited as authority therefor, in the consideration of the particular acts and issues under discussion. Undoubtedly such statements are correct expressions of the law but it does not follow that any of them, or even all of them if considered together, would constitute a proper statement of the emergency rule for the information and enlightenment of a jury. In denying the motion for a new trial the circuit judge expressed the opinion that the proofs in the case did not support a conclusion that defendant was confronted by a sudden emergency. In indicating such view, emphasis was placed on the physical facts in the case. It may be noted also that no claim was made on behalf of plaintiff in her declaration or in the course of the trial that she was entitled to recover damages on the theory that negligence of the defendant at the instant, or thereafter, that the horse leaped in front of the car, if such was the fact, was a proximate cause of the accident and the injuries sustained by plaintiff. Such was not the theory of plaintiff's cause of action.

While the requests, as submitted, were not given, the court did state to the jury:

"The duty to keep an automobile under control involves the ability to stop promptly within a reasonable distance. This duty does not extend so far as to require that it must always be possible to bring an automobile to an immediate stop upon the sudden arising of a dangerous situation which the driver could not reasonably have anticipated."

Such charge, we think, fairly protected the rights of the defendant. In any event, none of the requests presented by the defendant constituted a complete

and proper statement of the emergency rule. Considering all of them together leads to a like conclusion. They contain no suggestion that the rule does not apply if the emergency resulted in part, or wholly, from the negligence of the party seeking to invoke its protection.

In *Walker* v. *Rebeuhr*, 255 Mich 204, the Court quoted with approval from Huddy on Automobiles (8th ed), p 359, as follows:

" 'One who suddenly finds himself in a place of danger, and is required to act without time to consider the best means that may be adopted to avoid the impending danger, is not guilty of negligence if he fails to adopt what subsequently and upon reflection may appear to have been a better method, unless the emergency in which he finds himself is brought about by his own negligence.' "

In *Lagassee* v. *Quick*, 273 Mich 295 (syllabus 4), it was held that:

"If sudden emergency confronting defendant motorist was created solely by act of plaintiff pedestrian, a woman 62 years of age, in suddenly jumping or stepping backward into his path, he was entitled to instruction that under such an emergency, negligence should not be found merely because he did not adopt a different course to avoid the accident but if driver was guilty of negligence which helped to bring about the emergency, he was not entitled to benefit of such instruction."

In *Murner* v. *Thorpe*, 284 Mich 331, 335, it was stated, citing *Walker* v. *Rebeuhr, supra,* that the rule only applies "if the emergency has not been brought about by the party's own negligence." In *Socony Vacuum Oil Co.* v. *Marvin*, 313 Mich 528, 546, the trial court charged the jury with reference to the emergency rule, ignoring, however, the limitation that such rule did not apply "if the peril was caused

by negligence on the part of plaintiff's driver or if his negligence contributed to such result." It was held that stating the rule without embodying the necessary qualification was error. The judgment in *Hansel* v. *Hawkins,* 326 Mich 177, was reversed for a like error. In the case at bar the defendant's requests could not properly have been given in the form submitted. They were in consequence subject to denial for such reason, as well as for the reason assigned by the trial court.

Incidental matters referred to by counsel in their briefs do not require discussion. The record before us does not disclose that any error occurred in the course of the trial in circuit court of such prejudicial nature as to require a reversal.

The judgment is affirmed, with costs to appellee.

DETHMERS, C. J., and ADAMS, BUTZEL, BUSHNELL, SHARPE, BOYLES, and REID, JJ., concurred.